## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PATRICIA T.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-1028 (GMH) |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Patricia T. filed this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1382(c)(3). Plaintiff alleges that the Administrative Law Judge ("ALJ") who handled her claim failed to properly evaluate opinion evidence in determining that she is not disabled. She also argues that the Social Security Administration's ("SSA") Appeals Council erroneously failed to consider additional evidence obtained after the ALJ rendered his decision. For those reasons, Plaintiff asks that the ALJ's decision denying benefits be vacated and that the case be remanded for further administrative proceedings. The Commissioner takes the opposite position and urges affirmance

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Aug. 17, 2022).

of the ALJ's ruling. Upon consideration of the parties' briefs and the administrative record, the

Court grants Plaintiff's motion and denies Defendant's motion.[2]

## I.      BACKGROUND

### A.      Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the SSA must find a claimant

to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To make that determination, an ALJ gathers

evidence, holds a hearing, takes testimony, and performs the following five-step, sequential in-

quiry of the disability claim:

> Step one: whether the claimant is engaging in "substantial gainful activity";[3]
>
> Step two: whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[4]
>
> Step three: whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

---

[2] The relevant docket entries for purposes of this Memorandum Opinion are: (1) the administrative record (ECF No. 14 and its attachments), (2) Plaintiff's motion for judgment of reversal (ECF No. 20-1), (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 21), and (4) Plaintiff's combined opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition (ECF No. 23). The page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims). "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[4] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[5] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[6]

See 20 C.F.R. § 416.920; see also 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.  Affirmative answers to questions 3 or 5 establish disability."  Hines v. Bowen, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  Callahan v. Astrue, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform.  Id.  In making this determination, an ALJ may call a vocational expert ("VE") to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.  Id. at 90.

---

[5] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); see also 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is required.  20 C.F.R. § 416.920(a)(4)(iv); see also 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[6] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled.  Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  Id. (alteration in original) (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)).  Additionally, in determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  Callahan v. Astrue, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

**B.**     **Plaintiff's Disability Claims, Procedural History, and the Administrative Hearing**

Plaintiff is 51 years old and has a twelfth-grade education.  ECF No. 14-2 at 76–77; ECF No. 14-5 at 7.  She worked as a public school bus driver in the D.C. metropolitan area for seventeen years until she stopped working in June 2017.  ECF No. 14-2 at 77–79; ECF No. 14-5 at 14.

Plaintiff filed applications for DIB on September 7, 2018, and for SSI benefits on October 11, 2018.  ECF No. 14-2 at 11; ECF No. 20-1 at 3.  She claimed that since June 17, 2017, she had been disabled due to gout, hypertension, gastroesophageal reflux disease ("GERD"), and arthritis of the back.  ECF No. 20-1 at 3.  Plaintiff's applications were denied initially on February 21, 2019, and upon reconsideration on May 21, 2019.  ECF No. 14-2 at 11; ECF No. 20-1 at 3.  On June 4, 2019, Plaintiff requested a hearing before an ALJ, which was held telephonically on April 2, 2020.  ECF No. 14-2 at 11.

In advance of the April 2, 2020 hearing, Plaintiff either submitted all written evidence to the ALJ.  *Id.*; ECF No. 14-6 at 66.  In her document disclosure, Plaintiff noted that medical records requests sent to George Washington University Medical Faculty Associates ("GW MFA") and Providence Internal Medicine remained outstanding.  ECF No. 14-6 at 66–68.  At the administrative hearing, Plaintiff's counsel requested an additional two weeks to submit the outstanding records from GW MFA and Providence Internal Medicine, which the ALJ granted.  ECF No. 14-2 at 75–76.  After the hearing, Providence Internal Medicine notified the ALJ that there were no medical records during the requested period between March 16, 2019, and January 30, 2020.  ECF No. 14-2 at 11; ECF No. 14-7 at 132.  However, GW MFA did submit records to the ALJ, which were admitted into the record.  ECF No. 14-2 at 11; ECF No. 14-7 at 153–62.

At the hearing, the ALJ took the testimony of Plaintiff and a VE.  ECF No. 14-2 at 76–102.  Plaintiff testified that she stopped working in 2017 due to gout flare-ups in her foot, which

prevented her from driving.  *Id.* at 80.  While she was still working, gout flare-ups would cause Plaintiff to sometimes take a week or two off from work.  *Id.* at 80–81.  Plaintiff testified that she still experienced gout flare-ups frequently.  *Id.* at 81.  She also said that she could sit for about 30 minutes at a time before needing to stand up due to aching in the lower back, hips, and legs.  *Id.* at 82.  Plaintiff further testified that she often needed get out of bed when sleeping to move around, which alleviated her pain.  *Id.* at 83–84.  According to Plaintiff, once she stood up, she could stand for 30 to 45 minutes.  *Id.* at 82.  She testified that she could walk for about five minutes at a time. *Id.*  Plaintiff also stated that while she sometimes cooks and shops by herself, her son and daughter provide significant help.  *Id*. at 83.  Regarding her prior work as a school bus driver, Plaintiff testified that her regular morning shift lasted from 6:00 a.m. to 9:30 a.m.  *Id.* at 84–86.  Her afternoon shift would begin around 1:00 p.m. and end between 5:00 and 5:30 pm.  *Id.* at 87–89.  Plaintiff explained that three and a half hours was her longest continuous stretch of driving.  *Id.* at 89–91.  She had an assistant who helped clean the bus by wiping down the seats, sweeping the floor, and picking up trash under the seats.  *Id.* at 91–93.

Next, the ALJ asked the VE to classify Plaintiff's past work and answer a series of hypothetical questions.  ECF No. 14-2 at 96–99.[7]  The VE explained that Plaintiff's past work as a school bus driver was "semi-skilled" with "a strength level of medium."  *Id.* at 96–97.  The ALJ then posed a hypothetical individual of Plaintiff's age and education with the past work of a school bus driver who could occasionally lift, carry, push, and pull 50 pounds; frequently lift, carry, push, and pull 25 pounds; sit for six hours in an eight-hour work day; stand or walk for six hours in an eight-hour work day; frequently climb ramps and stairs, balance, kneel, crouch, and crawl; and occasionally climb ropes, ladders, scaffolds, and stoop.  *Id.* at 97.  Those capabilities tracked the

---

[7] Earlier in the hearing, the ALJ established the vocational expert's qualifications, to which Plaintiff had no objections. ECF No. 14-2 at 95–96.

exertional requirements of "medium" work.  *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (defining

"medium work" as involving "lifting no more than 50 pounds at a time with frequent lifting or

carrying of objects weighing up to 25 pounds").  The VE testified that such a hypothetical individ-

ual could perform Plaintiff's past work as a school bus driver.  *Id.* at 97–98.  The ALJ then asked

whether any skills would transfer from the past work as a school bus driver.  *Id*. at 98.  The VE

responded that if the hypothetical individual were limited to light or sedentary work, there would

be no transferrable skills and no ability to perform past work.  *Id.*

Plaintiff's attorney then posed a series of hypothetical questions to the VE.  *Id.* at 98–99.

First, counsel proposed a hypothetical individual who needed to avoid prolonged sitting and stand-

ing, which meant that she could sit or stand for an hour at a time before needing a five-minute

break.  *Id.* at 98.  The VE testified that such an individual could not work as a school bus driver.

*Id.*  Next, counsel proposed a hypothetical individual who could rarely lift twenty pounds and

occasionally lift less than twenty pounds.  *Id.* at 98–99.  The VE opined that this hypothetical

individual also could not work as a school bus driver.  *Id.* at 99.  Finally, Plaintiff's counsel pro-

posed a hypothetical individual who has gout flare-ups, which cause her to unexpectedly miss two

days of work in a row once a month.  *Id.*  The VE responded that such an individual could not

maintain competitive employment.  *Id.*  The ALJ then proposed a hypothetical individual who

could sit or stand for only four hours at a time, totaling to six hours in an eight-hour work day.  *Id.*

The VE testified that such an individual could perform Plaintiff's past work as a school bus driver

as she performed it.  *Id.* at 99–100.

On April 10, 2020, Plaintiff requested two weeks to submit a rebuttal argument challenging

the VE's testimony, which the ALJ granted.  ECF No. 14-2 at 11; ECF No. 14-6 at 69.  The ALJ

notified Plaintiff that the record would close on April 16, 2020, unless she requested more time to

submit additional records.  ECF No. 14-2 at 11; ECF No. 14-6 at 70.  On April 18, 2020, Plaintiff

submitted a post-hearing brief raising two arguments.  Plaintiff contended that the VE's qualifica-

tions were deficient and did not entitle her to provide expert testimony.  ECF No. 14-6 at 71.

Further, and more relevant to this appeal, Plaintiff objected to one of the ALJ's hearing hypothet-

icals.  *Id.* at 71–72.  As explained, the ALJ posed a hypothetical to the VE that largely tracked the

requirements of "medium" work but limited Plaintiff to only "occasional[]" stooping.  That was

error, Plaintiff argued, because medium work necessarily requires that a person "be able to stoop

frequently (from one-third to two-thirds of the time)."  *Id.* at 71; *see also* SSR 85-15, 1985 WL

56857, at *7 (S.S.A. Jan. 1, 1985) ("[B]ecause of the lifting required for most medium, heavy, and

very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the

time); inability to do so would substantially affect the more strenuous portion of the occupational

base.").  Thus, Plaintiff asserted that because "the only hypothetical given at the hearing was me-

dium [work], the decision on this case should be fully favorable."  ECF No. 14-6 at 72.

The ALJ denied Plaintiff's request for benefits in a decision issued on April 29, 2020.  ECF

No. 14-2 at 11–23.  By that date, all submitted records had been marked as exhibits, admitted into

the record, and incorporated into the ALJ's findings.  *Id.* at 11.  When the Appeals Council denied

review on February 9, 2021, the ALJ's decision became the final decision of the Commissioner.

*See id.* at 2–6.

### C.    The ALJ's Decision

As noted, the ALJ issued his decision denying benefits on April 29, 2020.  ECF No. 14-2

at 11–23.  The ALJ found that Plaintiff's impairments left her with the RFC to perform medium

work, except that she could "only frequently climb ramps/stairs, balance, kneel, crouch, and crawl"

and "occasionally climb ropes, ladders, or scaffolds and stoop."  *Id.* at 15.  Based on that finding,

the ALJ concluded that Plaintiff was capable of performing her past relevant work as a school bus driver, reasoning that such work does not require the performance of work-related activities precluded by Plaintiff's RFC.  *Id.* at 20.

       1.     Substantial Gainful Activity, Severe Impairment, and the Listings

At step one of the five-part analysis outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 17, 2017, the alleged onset date of her disability. *Id.* at 14.  At step two, he determined that Plaintiff had the following "severe" impairments:  degenerative disc disease of the lumbar spine, gout, hypertension, and obesity.  *Id.*

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments in the Listings.  *Id.* at 14–15.  Specifically, he considered Listing 1.04 for spinal disorders, Listing 4.04 for ischemic heart disease, and Listing 14.09 for inflammatory arthritis.  *Id.*  As to Listing 1.04, the ALJ found that the record did not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis—at least one of which must be present to meet Listing 1.04.  *Id.* at 14.  The ALJ noted that Plaintiff's physical examinations showed "normal muscle strength" and little evidence of "neurological deficits," "spinal arachnoiditis, or lumbar spinal stenosis resulting in inability to ambulate effectively."  *Id.*  As to Listing 4.04, the ALJ observed that Plaintiff's cardiovascular conditions did not result in myocardial ischemia. *Id.* at 14.  More, Plaintiff's records did not show any of the required conditions for Listing 4.04, which include either three separate ischemic episodes, or coronary artery disease that seriously limits Plaintiff's ability to "independently initiate, sustain, or complete activities of daily living." *Id.* at 14–15.  Finally, as to Listing 14.09, the ALJ found that Plaintiff's swelling from gout did not establish "persistent" inflammation or deformity.  *Id.* at 15.  Specifically, the record did not show inflammation in one or more major peripheral joints with involvement of two or more body

systems, a required condition of Listing 14.09. *Id.* Notably, Plaintiff's weight remained stable, she did not complain of significant fatigue, and there was little evidence of fever, all of which are "listed constitutional symptoms" for inflammatory arthritis. *Id.* As for Plaintiff's obesity, the ALJ acknowledged that it created more than a "minimal" limitation in her ability to engage in work-related activities. *Id.* However, after considering the effects of Plaintiff's obesity, both alone and in combination with her other severe impairments, the ALJ still determined that the record did not meet or medically equal any Listing. *Id.* The ALJ next turned to Plaintiff's RFC.

2.      Plaintiff's RFC

The ALJ found that Plaintiff had the RFC to perform "medium work," except that she could only frequently climb ramps and stairs, balance, kneel, crouch, and crawl, and occasionally climb ropes, ladders, or scaffolds, and stoop. *Id.*

In determining Plaintiff's RFC, the ALJ considered "all symptoms" and the extent to which those symptoms were consistent with the record evidence, including the objective medical evidence and medical opinions. *Id.* at 15–16. In considering Plaintiff's symptoms, the ALJ undertook a two-step process. *Id.* First, he found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 17. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the evidence in the record. *Id.*

At the outset, the ALJ considered the objective medical evidence. Starting with Plaintiff's musculoskeletal limitations, the ALJ found that most physical examinations showed full range of motion of the spine, normal gait without use of a cane, and no evidence of joint tenderness, swelling, redness, or edema. *Id.* at 17–18. Specifically, Plaintiff's treating physician, Dr. Shadi Soufi, observed a normal, full range of motion in the back and no tenderness, swelling, or redness of

joints on October 5, 2017 (ECF No. 14-7 at 12–13), August 22, 2018 (*id.* at 17–18), August 30, 2018 (*id.* at 20–21), December 17, 2018 (*id.* at 31–32), and March 11, 2019 (*id.* at 27–28).   ECF No. 14-2 at 17.   The ALJ also noted that Plaintiff's February 2019 consultative examination with Dr. Elizabeth Nolte showed some degeneration of the spine.   *Id.* at 18; *see also* ECF No. 14-7 at 68.   Specifically, Plaintiff's musculoskeletal examination revealed low back and left hip tenderness, as well as some range of motion restriction in the spine.   ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 72.   Plaintiff's straight leg-raise testing elicited hamstring pain, but she demonstrated full range of motion of the hips, knees, and ankles bilaterally.   ECF No. 14-2 at 18.   More, Plaintiff retained intact reflexes and near-full muscle strength throughout the upper and lower extremities.   *Id.*; *see also* ECF No. 14-7 at 72.   Diagnostic imaging of the lumbar spine and right hip conducted as part of Dr. Nolte's examination showed some pathology, including disc space narrowing, but no significant osteoarthritis in the hip.   ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 68–69. Despite these findings showing some degeneration, the ALJ observed that Plaintiff still demonstrated normal gait without the use of a cane and a normal stance.   ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 71.   The ALJ highlighted Dr. Nolte's finding that Plaintiff retained the ability to walk on her heels and toes without difficulty, change for her exam independently, get on and off the exam table without assistance, and rise from the chair without difficulty, as well as her ability to perform three-fourths of a full squat.   ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 71–72.   The ALJ also found Plaintiff's treatment for her chronic back pain to be "infrequent and conservative," noting that Plaintiff had not followed up with her recommended treatment options of physical therapy and pain management.   ECF No. 14-2 at 18.   In light of this evidence, the ALJ concluded that the record did not corroborate Plaintiff's allegations regarding the severity of her back pain, which Plaintiff said required her to stand after sitting for 30 minutes.   *Id.* at 16, 18, 82.

The ALJ also concluded that Plaintiff's hypertension did not warrant physical limitations surpassing those in the RFC. *Id*. at 18. Acknowledging Plaintiff's history of poorly controlled blood pressure, the ALJ found that the record did not show "any episodes of hypertensive urgencies requiring emergency treatment." *Id*. Rather, most examinations demonstrated normal heart rate and rhythm without evidence of extremity edema. *Id.*; *see also* ECF No. 14-7 at 12–13, 17–18, 20, 23, 71–72. Although Plaintiff exhibited elevated blood pressure on October 5, 2017 (ECF No. 14-7 at 12), August 22, 2018 (*id.* at 17), August 30, 2018 (*id.* at 20), and December 17, 2018 (*id.* at 31), she consistently denied having chest pain, shortness of breath, or lower extremity edema. ECF No. 14-2 at 17; *see also* ECF No. 14-7 at 12, 17. The ALJ pointed to Dr. Soufi's finding in March 2019 that Plaintiff's blood pressure was well controlled by medication despite her elevated heart rate. ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 27. During that appointment, Plaintiff exhibited an elevated heart rate, but she denied experiencing palpitations, chest pain, or labored breathing. ECF No. 14-2 at 18.

Regarding Plaintiff's gout, the ALJ likewise concluded that the objective medical evidence did not support greater physical limitations than those listed in the RFC. *Id.* at 18–19. Despite reporting in her October 2017 appointment with Dr. Soufi that she recently had a gout attack (ECF No. 14-7 at 12), Plaintiff regularly denied having any gout flares. ECF No. 14-2 at 17–18; *see also* ECF No. 14-7 at 17–18, 20, 27. The ALJ also found that the medical record reflected that Plaintiff's gout symptoms improved with medication. ECF No. 14-2 at 18. Further, the ALJ determined that Plaintiff's obesity did not "compound[ ] or exacerbate[ ]" her symptoms to the detriment of her RFC. *Id.* at 18–19. Finally, the ALJ noted that Plaintiff's self-reported activities were inconsistent with the alleged severity of her symptoms and limitations. *Id.* at 19. In her consultative examination with Dr. Nolte, Plaintiff reported that she cooked three times a week, cleaned twice a

week, did laundry, shopped once a month, showered and dressed herself daily, watched television, socialized with friends, and went to church. *Id.*; *see also* ECF No. 14-7 at 71. On the basis of those self-reported activities and the objective medical evidence, the ALJ concluded that the record supported a RFC of medium work, but with only frequent climbing, balancing, kneeling, crouching, and crawling, and occasional climbing of ropes, ladders, or scaffolds, and stooping. ECF No. 14-2 at 15, 19.

After considering the objective medical evidence, the ALJ addressed the opinion evidence. *Id.* at 19. The ALJ turned first to the opinion of Dr. Nolte, the consultative examiner. *Id.* Dr. Nolte concluded that Plaintiff had a mild limitation in squatting and bending and wrote that she "should avoid prolonged sitting, prolonged standing, frequent bending, heavy lifting, and heavy carrying." *Id.*; *see also* ECF No. 14-7 at 73. The ALJ found the opinion "somewhat persuasive," explaining that Dr. Nolte's opinion was consistent with the record showing no significant treatment for Plaintiff's musculoskeletal problems and her normal range of motion and normal gait in most examinations. ECF No. 14-2 at 19. The ALJ also credited Dr. Nolte for having conducted "an extensive physical examination" and her knowledge of SSA disability matters. *Id.* Yet despite finding the opinion to be "generally consistent with the evidence," the ALJ found Dr. Nolte's opinion to be "only somewhat persuasive" because Dr. Nolte failed to "define clearly in functional terms the meaning of avoiding prolonged sitting and prolonged standing, which resulted in some ambiguity." *Id.*

Next, the ALJ considered the opinion of Dr. Soufi. *Id.* at 19–20. Dr. Soufi opined that Plaintiff's physical capabilities were limited in a number of respects. *Id.*; *see also* ECF No. 14-7 at 118–21. Regarding Plaintiff's lifting and carrying abilities, Dr. Soufi found Plaintiff could occasionally lift less than ten pounds, rarely carry less than ten pounds, rarely lift up to twenty

pounds, and never carry greater than ten pounds.[8]  ECF No. 14-2 at 19; *see also* ECF No. 14-7 at 119.  As for sitting, standing, and walking, Dr. Soufi determined that Plaintiff could sit for three hours and stand or walk for less than one hour in an eight-hour workday.  ECF No. 14-2 at 19.  While sitting, Dr. Soufi noted that Plaintiff's legs needed to be elevated.  *Id.*  Dr. Soufi also opined that Plaintiff required an option to lie down or recline throughout the workday, likely needing to recline four to five times during the day for about twenty minutes each.  *Id.*; *see also* ECF No. 14-7 at 119.  Dr. Soufi acknowledged that Plaintiff did not require the use of a cane or other assistive device to "ambulate effectively,"[9] but, confusingly, also found that Plaintiff needed a cane to walk less than one block due to right hip pain.  ECF No. 14-2 at 19; *see also* ECF No. 14-7 at 119–20.  With regard to Plaintiff's use of her hands, Dr. Soufi determined that Plaintiff could occasionally reach overhead and in all other directions, as well as frequently handle, finger, feel, push, or pull.  ECF No. 14-2 at 19; *see also* ECF No. 14-7 at 120.  Dr. Soufi found that Plaintiff could frequently operate foot controls with her left foot, but only rarely use foot controls with her right foot due to right hip osteoarthritis.  ECF No. 14-2 at 19; *see also* ECF No. 14-7 at 120.  Finally, Dr. Soufi opined that Plaintiff could frequently rotate her head and neck, rarely climb ramps and stairs, kneel, and crawl, and never climb ladders and scaffolds, stoop, or crawl.  ECF No. 14-2 at 20; *see also* ECF No. 14-7 at 121.

The ALJ found Dr. Soufi's opinion unpersuasive for two reasons.  First, the ALJ explained that objective medical findings did not support Dr. Soufi's limitations on Plaintiff's ability to sit, stand, and walk because physical examinations consistently showed "full range of motion of the

---

[8] Dr. Soufi's opinion defines "occasionally" as "6% to 33% of an 8-hour work day" and "rarely" as "1% to 5% of an 8-hour work day."  ECF No. 14-7 at 118.

[9] Ambulating effectively requires an individual to be capable of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."  ECF No. 14-7 at 119.

spine, full strength, no neurological deficits, and minimal arthritis of the right hip on diagnostic imaging." ECF No. 14-2 at 20. The ALJ also emphasized that most examinations showed normal range of motion and normal gait without use of an assistive device. *Id*. Second, the ALJ found Dr. Soufi's proposed level of restrictions to be "entirely inconsistent" with Plaintiff's own reports of her activities and the other record evidence, which showed "no significant treatment" for her alleged musculoskeletal issues. *Id.*

Finally, the ALJ evaluated opinion evidence submitted by Drs. Fizzeh Nelson-Desiderio, Maurice Prout, and Lisa Venkataraman, the state agency consulting physicians. *Id.* Dr. Nelson-Desiderio limited Plaintiff to medium work, modifying her capabilities such that Plaintiff could perform frequent postural movements, but occasionally climb ladders, ropes, or scaffolds. *Id.* at 20; *see also* ECF No. 14-3 at 8–9, 18–19. Dr. Prout's and Dr. Venkataraman's opinions were substantially similar to Dr. Nelson-Desiderio's. ECF No. 14-2 at 20; *see also* ECF No. 14-3 at 29–30, 44–45. Although the medical consultants did not examine Plaintiff, the ALJ credited their "thorough[]" explanations of their opinions. ECF No. 14-2 at 20. The ALJ also found their opinions to be consistent with Plaintiff's reported capabilities and activities, as well as the records showing minimal degeneration in diagnostic imaging, no significant treatment of musculoskeletal impairments, and findings of normal range of motion and normal gait in most examinations. *Id.* Unsurprisingly, then, the ALJ found the consulting physicians' opinions highly persuasive. *Id.*

### 3. Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ concluded that Plaintiff had past relevant work as a school bus driver. *Id.* at 20. The ALJ overruled Plaintiff's post-hearing objections to the VE's qualifications, noting that Plaintiff's counsel had the opportunity to object to the VE's qualifications at the hearing but failed to do so. *Id.* at 21–22. The ALJ then rejected Plaintiff's arguments concerning the limitation

to "occasional" stooping, finding that such a limitation (as opposed to frequent stooping) did not

foreclose medium work.  *Id.* at 22.  Though he conceded that SSR 85-15 suggests that occasional

stooping would impact the ability to perform "most medium, heavy, and very heavy jobs," the ALJ

interpreted that language to mean that "not all medium work is precluded" by a restriction to oc-

casional stooping.  *Id.*  So, the ALJ determined that some medium jobs could be performed with a

restriction to occasional stooping.  *Id.*  The ALJ also found the VE's testimony that Plaintiff could

return to her prior position as a school bus driver consistent with SSR 83-10, which explains that

some medium jobs are "<u>performed primarily in a sitting position, e.g., taxi driver, **bus driver**, and

tank-truck driver.</u>"  *Id.* at 22 (emphasis in original) (citing SSR 83-10, 1983 WL 31251, at *6

(S.S.A. Jan. 1, 1983)).  Therefore, after considering the VE's testimony and the evidence, the ALJ

concluded that Plaintiff is capable of performing her past relevant work (i.e., as a bus driver) as

actually and generally performed.  *Id.* at 20, 22.

The ALJ's decision became the final decision of the Commissioner when the SSA's Ap-

peals Council denied Plaintiff's request for review on February 9, 2021.  *Id.* at 2–6.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the

Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision

if it is based on substantial evidence in the record and the correct application of the relevant legal

standards.  *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not

based on substantial evidence or that incorrect legal standards were applied."  *Lane-Rauth v. Barn-*

*hart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  Ultimately, the substantial evidence standard is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high.").  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own."  *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").  However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts."  *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).  In applying this standard, courts "must also be mindful of the harmless-error rule.  Consequently, even if

[the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

## III.    DISCUSSION

Plaintiff's primary argument for remand is that the ALJ failed to properly evaluate the opinion evidence in the record, and specifically the opinions of Drs. Soufi and Nolte.  ECF No. 20-1 at 6, 7, 12.  The Court agrees with respect to Dr. Nolte.  The ALJ's sole reason for not incorporating Dr. Nolte's limitations on prolonged sitting and prolonged standing into Plaintiff's RFC was that Dr. Nolte's use of the term "prolonged" created "some ambiguity."  ECF No. 14-2 at 19.  In these circumstances, that was a legally insufficient reason to discount the opinion.  The Court therefore remands the case to the SSA for further proceedings.

### A.    The ALJ Improperly Evaluated Dr. Nolte's Opinion.

Plaintiff asserts that remand is warranted because, despite finding Dr. Nolte's opinion "generally consistent with the evidence," the ALJ did not properly incorporate the limitations her opinion reflected into her RFC.  ECF No. 20-1 at 12.  The ALJ evaluated Dr. Nolte's opinion as follows:

> Dr. Elizabeth Nolte . . . prepared a medical source opinion dated February 12, 2019.
> Based on the evaluation, Dr. Nolte determined there was a mild limitation in

17

squatting and bending.  Dr. Nolte further indicated the claimant should avoid pro-
longed sitting, prolonged standing, frequent bending, heavy lifting, and heavy car-
rying.  Dr. Nolte performed an extensive physical examination and provided clear
explanations about [Plaintiff's] limitations based on her findings.  Moreover, Dr.
Nolte is knowledgeable about Social Security disability, which provides further
credence to her opinion.  Further, the opinion is substantially consistent with the
record showing no significant treatment for her musculoskeletal problems as well
as the claimant's reported capabilities.  Moreover, the opinion is consistent with
most examinations showing normal range of motion and normal physiological gait
without the use of a cane.  While the opinion is generally consistent with the evi-
dence, Dr. Nolte failed to define clearly in functional terms the meaning of avoiding
prolonged sitting and prolonged standing, which resulted in some ambiguity.  Ac-
cordingly, the undersigned finds the opinion is only somewhat persuasive.

ECF No. 14-2 at 19 (internal citations omitted).  Plaintiff raises two challenges to the ALJ's as-

sessment of Dr. Nolte's opinion.  First, she contends that despite partially crediting Dr. Nolte's

opinion, the ALJ erred by "fail[ing] to make any incorporation of Dr. Nolte's opinion into his final

RFC determination."  ECF No. 20-1 at 12.  The argument lacks merit.  To the contrary, the ALJ

incorporated all of Dr. Nolte's proposed limitations into the RFC, except those on prolonged sitting

and prolonged standing.  Second, Plaintiff says the ALJ did not explain his reasoning for rejecting

Dr. Nolte's opinion.  *Id.*  On that score, the Court agrees in part.  Although the ALJ explained why

he chose not to incorporate Dr. Nolte's restrictions on prolonged sitting and standing, his reasoning

does not withstand scrutiny.  Accordingly, remand is appropriate.

      1.     The ALJ Incorporated Some of Dr. Nolte's Limitations into Plaintiff's RFC.

As explained, Plaintiff claims the ALJ erred by failing to include *any* of Dr. Nolte's opinion

in the RFC assessment.  ECF No. 20-1 at 12.  Not so.  The Court finds that the ALJ incorporated

all of Dr. Nolte's limitations, save those on prolonged sitting and prolonged standing.

As a threshold matter, even if an ALJ does not expressly incorporate a physician's proposed

limitations, the RFC determination can implicitly account for such restrictions.  *See, e.g.*, *Mitchell*

*v. Berryhill*, 241 F. Supp. 3d 161, 172 (D.D.C. 2017) ("[T]he ALJ's obligation here was to

'sufficiently capture[ ] the essence' of [the physician's] opinion within [p]laintiff's RFC—not to repeat her remarks verbatim." (second alteration in original) (quoting *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015))).  And restricting a claimant to a particular type of work can implicitly incorporate a physician's limitations.  *See, e.g.*, *Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *9 (D.D.C. Sept. 3, 2021) (rejecting the claimant's argument "that the ALJ failed to include any limitation on [her] ability to stand and walk" because a RFC restricting claimant to light work adequately accounted for a limitation on claimant's ability to stand and walk); *Carr v. Astrue*, No. 11-cv-764, 2013 WL 360600, at *7 (M.D. Ala. Jan. 30, 2013) (finding that the ALJ "implicitly accounted for moderate limitations in [the claimant's] ability to carry objects" by limiting the claimant's RFC to medium work); *see also Crawford v. Astrue*, No. 13-cv-6068, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) (finding that although the ALJ did not discuss the medical source's opinions, he incorporated the physician's limitations into the RFC by restricting claimant to jobs requiring certain abilities).

Here, Plaintiff's claim that the ALJ did not incorporate any of the limitations reflected in Dr. Nolte's opinion into the RFC assessment reflects a misreading of the ALJ's findings.  ECF No. 20-1 at 12.  Based on her examination, Dr. Nolte found Plaintiff to have a "mild limitation in squatting and bending."  ECF No. 14-2 at 18; *see also* ECF No. 14-7 at 73.  Additionally, Dr. Nolte opined that Plaintiff should avoid "prolonged sitting, prolonged standing, frequent bending, heavy lifting, and heavy carrying."  ECF No. 14-2 at 18.  After reviewing the evidence in the record, including Dr. Nolte's opinion, the ALJ determined Plaintiff to have the residual functional capacity to perform medium work, but with only frequent climbing of ramps and stairs, balancing, kneeling, crouching, and crawling, and occasional climbing of ropes, ladders, or scaffolds and stooping.  *Id.*

at 15.  That RFC both explicitly and implicitly accounted for many of the limitations set forth in Dr. Nolte's opinion.

As to Dr. Nolte's restrictions on heavy lifting and carrying, the RFC implicitly accounted for them by limiting Plaintiff to medium work.  The SSA's regulations define "medium work" as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).  Courts have found that medium work is consistent with avoidance of heavy lifting.  *See, e.g.*, *Johnson v. Sullivan*, 915 F.2d 1575 (7th Cir. 1990) (noting that a claimant's limitation on "heavy lifting . . . is consistent with the ALJ's determination that [the claimant] was capable of only medium work"); *Thomas v. Berryhill*, No. 17-cv-240, 2018 WL 2247281, at *11 (N.D. Fla. Apr. 13, 2018) (finding that a RFC of medium work is consistent with an inability to engage in heavy lifting), *report and recommendation adopted*, 2018 WL 2244714 (N.D. Fla. May 15, 2018); *Neal v. Colvin*, No. 15-cv-40, 2015 WL 4092335, at *2 (W.D. Pa. July 7, 2015) (finding that the definition of medium work—i.e., lifting no more than 50 pounds at a time and frequently lifting objects weighing up to 25 pounds—"can be read to be consistent with" a physician's opinion that the claimant could not do any work involving "heavy lifting").  Likewise, medium work is consistent with a restricted ability to engage in heavy carrying.  *See, e.g.*, *Keith v. Colvin*, No. 16-cv-76, 2017 WL 277911, at *3–4 (S.D. Ala. Jan. 20, 2017) (finding that the ALJ's RFC determination of medium work was consistent with the consultative examiner's conclusion that claimant could not engage in heavy carrying); *O'Brien v. Astrue*, No. 07-cv-1153, 2011 WL 1298755, at *7 (N.D.N.Y. Mar. 31, 2011) (finding that a restriction on heavy carrying was consistent with a RFC of medium work).  More, although Dr. Nolte did not define what she meant by "heavy," the existence of "heavy work" and "very heavy work" under 20 C.F.R. § 404.1567(d) and (e) also suggest that medium work does not require "heavy

carrying." Indeed, courts have found that a restriction on heavy carrying can be read to exclude only heavy and very heavy work. *See Davison v. Halter*, 171 F. Supp. 2d 1282, 1286–87 (S.D. Ala. 2001) (comparing the regulatory definitions of "heavy" and "very heavy" work with "medium" work). In this respect, it is notable that the ALJ found Dr. Nolte to be "knowledgeable about Social Security disability." ECF No. 14-2 at 19. Therefore, by limiting Plaintiff to medium work, the RFC incorporated Dr. Nolte's proposed restrictions on heavy lifting and heavy carrying.

Additionally, Plaintiff's RFC accounts for Dr. Nolte's restriction on frequent bending. *Id.* at 15. Given its considerable lifting requirements, medium work "usually requires frequent bending-stooping." SSR 83-10, 1983 WL 31251 at *6. Thus, absent additional restrictions on Plaintiff's RFC, medium work would fail to account for Dr. Nolte's opined limitation on frequent bending. However, Plaintiff's RFC limits her to only "occasional[]" stooping.[10] ECF No. 14-2 at 15. As compared to "frequent," which means "occurring from one-third to two-thirds of the time," SSR 83-10, 1983 WL 31251 at *6, the SSA's regulations define "occasionally" as "occurring from very little up to one-third of the time," *id.* at *5. Therefore, by restricting Plaintiff to occasional stooping, the RFC adopts Dr. Nolte's recommendation that Plaintiff avoid frequent bending.

So, Plaintiff's claim that the ALJ failed to incorporate *any* of Dr. Nolte's opinion into the RFC assessment misses the mark. ECF No. 20-1 at 12. As explained, the RFC adopts Dr. Nolte's limitations on bending, carrying, and lifting. The same, however, cannot be said of Dr. Nolte's opinion that Plaintiff should avoid prolonged sitting and prolonged standing. ECF No. 14-2 at 15. A RFC to perform medium work does not implicitly account for prolonged standing because "[i]n most medium jobs, being on one's feet for most of the workday is critical." SSR 83-10, 1983 WL 31251 at *6; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1222 (10th Cir. 2004) (noting that

---

[10] Stooping refers to a "type of bending in which a person bends his or her body downward and forward by bending the spine at the waist." SSR 83-10, 1983 WL 31251 at *6.

"prolonged standing" is "a requirement for medium work"); *Grimes v. Colvin*, No. 14-cv-373, 2015 WL 3495341, at *8 (S.D. Ala. June 3, 2015) ("[I]t is clear that medium work requires prolonged standing."); SSR 83-10, 1983 WL 31251 at *6 (explaining that medium work typically requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday"). Additionally, medium work does not necessarily account for Dr. Nolte's restriction on prolonged sitting because some medium jobs, like taxi drivers and bus drivers, "are performed primarily in a sitting position." SSR 83-10, 1983 WL 31251 at *6. Therefore, the ALJ effectively rejected Dr. Nolte's limitations on prolonged sitting and prolonged standing by concluding that Plaintiff could perform work at the medium exertion level. ECF No. 14-2 at 15. The issue then becomes whether the ALJ's reason for not incorporating those limitations into the RFC was legally sufficient. The Court now turns to that question.

>    2.    The ALJ Erred in Rejecting Dr. Nolte's Limitations on Standing and
>           Sitting Into Plaintiff's RFC.

Here, Plaintiff contends that the ALJ "provide[d] no explanation" as to why Dr. Nolte's restrictions on sitting and standing were not incorporated into the RFC despite finding her opinion to be somewhat persuasive. ECF No. 20-1 at 13. Again, such a categorical statement goes too far. In fact, the ALJ did explain why the limitations on sitting and standing did not make their way into the RFC, reasoning that Dr. Nolte's failure to "define clearly in functional terms the meaning of avoiding prolonged sitting and prolonged standing" resulted in "some ambiguity." ECF No. 14-2 at 19. That reason, however, was not sufficient, and the Court concludes that remand is necessary.

To be sure, even if an ALJ finds a medical opinion persuasive, the ALJ is not obligated to accept every part of the opinion. *See, e.g.*, *Massicotte v. Comm'r of Soc. Sec.*, No. 20-cv-2923, 2022 WL 2663406, at *5 (M.D. Fla. July 11, 2022) ("[T]he ALJ need not adopt every part of an opinion he or she finds persuasive."); *McClure v. Saul*, No. 20-cv-150, 2021 WL 3856577, at *7

(E.D. Mo. Aug. 30, 2021) (similar).  Indeed, an ALJ may implicitly reject part of an opinion by choosing to not incorporate the opined limitations.  However, when rejecting certain limitations or choosing to find an opinion persuasive or not, an ALJ must explain their reasoning.  *See, e.g.*, *Long v. Berryhill*, No. 18-cv-1146, 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019) (explaining that an ALJ is entitled to disregard portions of physicians' opinions but must give "logical reasons" for doing so); *Monte v. Astrue*, No. 08-cv-101, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009) ("[T]he ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision."); *see also Gray v. Comm'r of Soc. Sec.*, No. 13-cv-134, 2014 WL 1248024, at *6 (W.D. Pa. Mar. 26, 2014) (finding the ALJ's failure to explain why he implicitly rejected the doctor's limitations "prevent[ed] th[e] Court from determining whether substantial evidence supported the ALJ's decision to omit the additional restrictions from the RFC assessment").

Yet certain rationales for discounting a physician's opinion have been found lacking.  As relevant in this case, numerous courts have determined that rejecting physical limitations solely on the ground that the source providing the opinion described the limitations in a vague and/or am-biguous manner—as the ALJ did here—is not a legally sufficient reason for rejecting or discount-ing that opinion and warrants remand.  *See, e.g.*, *Guerra v. Berryhill*, 448 F. Supp. 3d 1115, 1123 (D. Nev. 2020) (finding that rejecting a physician's recommendation to avoid "heavy lifting, pro-longed sitting, and prolonged standing" because the recommendation was "vague and did not pro-vide a specific functional analysis" was "not a sufficient clear and convincing reason for rejecting [the physician's] findings"); *Chaney v. Saul*, No. 18-cv-1197, 2019 WL 3307108, at *9 (D.S.C. July 2, 2019) (recommending remand where, as here, the ALJ's only explanation for rejecting a medical opinion was that "the opinion was 'vague,' and that [the physician] did not define the term 'prolonged'"), *report and recommendation adopted*, 2019 WL 3306106 (D.S.C. July 22, 2019);

*see also Vincent L.P. v. Saul*, No. 20-cv-5716, 2021 WL 2209674, at *4 (C.D. Cal. May 31, 2021) (remanding where the ALJ's "sole reason" for rejecting a medical source opinion was a vague term); *Georgia H. v. Comm'r of Soc. Sec.*, 19-cv-6904, 2021 WL 22506, at *4 (W.D.N.Y. Jan. 4, 2021) (remanding where the ALJ "[l]imit[ed] the weight given to [the physician's] opinion simply because it was too 'vague and ambiguous'").

Although this issue—rejecting limitations couched in vague and/or ambiguous terminology—appears to be a matter of first impression in this Circuit, holding that vagueness and/or ambiguity alone is not enough to discount a physician's opinion is consistent with the D.C. Circuit's recognition that ALJs have an "affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability."  *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987).  Given the non-adversarial nature of a social security hearing, "the ALJ is responsible in every case to ensure that an adequate record is developed consistent with the issues raised."  *Meriwether v. Astrue*, No. 12-cv-67, 2014 WL 8850108, at *11 (D.D.C. Nov. 24, 2014), *report and recommendation adopted*, Order Adopting Report & Recommendation of Magistrate Judge (D.D.C. May 19, 2015), ECF No. 13.  "That duty is triggered where there is an 'obvious gap or defect in the administrative record.'"  *Bryant v. Saul*, No. 16-cv-2196, 2019 WL 6619760, at *12 (D.D.C. Nov. 18, 2019) (quoting *Turner v. Astrue*, 710 F. Supp. 2d 95, 108 (D.D.C. 2010)), *report and recommendation adopted*, 2019 WL 6617757 (D.D.C. Dec. 5, 2019).  Consistent with the law of this Circuit, courts have recognized that an ALJ's decision to discount a medical source's opinion based on vagueness can create a gap in the record.  *See, e.g.*, *Georgia H.*, 2021 WL 22506, at *5 (noting that an ALJ's rejection of an opinion based on vagueness "created a gap in the record," and "the ALJ's failure to fill that gap, either by recontacting [the physician] or ordering a new examination, is [an] independent error warranting remand");

*Insalaco v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 401, 410 (W.D.N.Y. 2019) (concluding that "the ALJ's finding that almost half of the functional limitations identified by [the physician] were vague, or 'not particularly helpful,' creates a gap in the record that the ALJ was required to develop").

And where gaps in the record develop as a result of what the ALJ views as a vague and/or ambiguous opinion, a number of courts have said it is the duty of the ALJ to, where appropriate, re-contact physicians to clarify their opinions. *See, e.g.*, *Nathaniel W. v. Comm'r of Soc. Sec.*, No. C21-1416, 2022 WL 1711586, at *1 (W.D. Wash. May 27, 2022) ("[W]hen a medical opinion about a claimant's functional limits is unclear or ambiguous, the ALJ should develop and clarify rather than simply reject the opinion as lacking for insufficient explanation."); *Madera v. Comm'r of Soc. Sec.*, No. 20-cv-1459, 2021 WL 4480656, at *6 (E.D.N.Y. Sept. 30, 2021) (finding the ALJ "should have sought clarification from [the physician] before rendering his decision as to [claimant's] RFC" when the ALJ found the opinion vague yet not inconsistent with the claimant's medical records); *Kimble v. Berryhill*, No. 18-cv-301, 2019 WL 2234062, at *12 (D. Haw. May 23, 2019) (remanding where the ALJ characterized the word "prolonged" as vague, which "serve[d] as a reasonable basis to argue that the ALJ should have contacted [the physician] for clarification"); *Scott v. Berryhill*, No. 17-cv-468, 2018 WL 4442882, at *5 (W.D.N.Y. Sept. 17, 2018) (remanding where the ALJ objected to medical source's use of the term "prolonged standing" as vague and failed to recontact physician for clarification).

Here, the ALJ's rejection of Dr. Nolte's limitations on "prolonged sitting" and "prolonged standing" on the grounds that such limitations "resulted in some ambiguity" created such a gap. ECF No. 14-2 at 19.  Indeed, and much as in *Insalaco*, by not incorporating limitations on prolonged sitting and prolonged standing into the RFC, the ALJ rejected "almost half" of Dr. Nolte's

proposed restrictions on Plaintiff's capabilities (two of five). Yet there is no indication the ALJ re-contacted Dr. Nolte to clarify the meaning of the term "prolonged," which could have plugged the evidentiary gap. That was error, as the ALJ failed to fulfill his duty to develop the record and "investigate fully all matters at issue." *Poulin*, 817 F.2d at 870. This failure is magnified by the fact that the ALJ found Dr. Nolte's opinion "generally consistent with the evidence" and credited Dr. Nolte's examination and experience. ECF No. 14-2 at 19. Nor was the error harmless, because the medium work the ALJ found Plaintiff capable of performing may require prolonged sitting and standing. *See Grimes*, 2015 WL 3495341, at *8 (noting that medium work "requires prolonged standing"); SSR 83-10, 1983 WL 31251 at *6 ("In most medium jobs, being on one's feet for most of the workday is critical."); *see also Saunders*, 6 F. 4th at 4 (finding harmless error analysis applicable to review of disability determinations rendered by the SSA). To wit: the ALJ determined that Plaintiff could perform her prior work as a school bus driver, ECF No. 14-2 at 20–22, a position that certainly requires prolonged sitting, *see* SSR 83-10, 1983 WL 31251 at *6 (noting that the "bus driver" position is "performed primarily in a sitting position"). In other words, the ALJ's failure to incorporate Dr. Nolte's limitations on prolonged sitting and standing into the RFC is consequential to the ultimate disability finding because such restrictions may preclude medium work, including work as a bus driver. Remand is therefore appropriate. *See, e.g.*, *Madera*, 2021 WL 4480656, at *10 (concluding that "the ALJ's failure to resolve ambiguities and fully develop the record . . . warrants vacating the ALJ's decision and remanding the case"); *Ruiz v. Comm'r of Soc. Sec.*, No. 18-cv-9659, 2020 WL 728814, at *11 (S.D.N.Y. Feb. 13, 2020) (remanding to develop the record and seek clarification when the ALJ discounted physician's opinion due to vagueness); *Isernia v. Colvin*, No. 14-cv-2528, 2015 WL 5567113, at *10, 13 (E.D.N.Y. Sept. 22, 2015) (remanding with instructions for the ALJ to recontact the physician for clarification of her "vague"

opinion and further develop the record).  On remand, the ALJ should re-contact Dr. Nolte to clarify

her limitations on "prolonged" sitting and standing, or explain why the existing RFC is appropriate

notwithstanding the fact that Dr. Nolte's opinion "is generally consistent with the evidence."  ECF

No. 14-2 at 19.

### B.  On Remand, the ALJ May Re-Evaluate Dr. Soufi's Opinion.

Plaintiff also challenges the ALJ's assessment of Dr. Soufi's opinion.  Dr. Soufi concluded

that Plaintiff's physical capabilities were limited in a number of areas, but the ALJ rejected those

limitations as inconsistent with the other evidence of record.  ECF No. 14-2 at 19–20.  That was

error, Plaintiff contends, because not only was Dr. Soufi's opinion supported by and consistent

with the record, but the ALJ's reasoning for finding Dr. Soufi's opinion unpersuasive is under-

mined by his determination that Dr. Nolte's conclusions were, in fact, somewhat persuasive.  ECF

No. 20-1 at 9–11.  She also says the ALJ "mischaracterized" the record and failed to pose hypo-

thetical questions to the VE that tracked the limitations set forth in Dr. Soufi's opinion.  *Id.* at 11–

12.  Although the Court is not required to address these arguments because it remands on the other

grounds set forth above, it notes that the ALJ's treatment of Dr. Soufi's opinion was appropriate

for the most part—at least on the current record.  However, the ALJ may wish to re-evaluate the

persuasiveness of Dr. Soufi's opinion on remand depending on the additional information gathered

on Dr. Nolte's report.

Recall that Dr. Soufi, who has seen Plaintiff as a patient since 2012, found that she had a

lengthy set of limitations.  As the ALJ explained:

> Dr. Soufi found the claimant could occasionally lift less than 10 pounds, rarely
> carry less than 10 pounds, rarely lift up to 20 pounds, and never carry greater than
> 10 pounds. Dr. Soufi determined the claimant could sit for three hours and stand
> and/or walk for less than one hour in an eight-hour workday. Dr. Soufi found that
> she required the option to lie down or recline throughout the day. Dr. Soufi deter-
> mined the claimant needed to elevate her legs with sitting. Dr. Soufi found that she

did not require an assistive device to ambulate effectively. Dr. Soufi [also] stated
the claimant needed a cane to walk less than one block because of right hip pain.
Dr. Soufi found the claimant could occasionally reach overhead and in all other
directions and frequently handle, finger, feel, push, or pull bilaterally. Dr. Soufi
determined the claimant could frequently operate foot controls with the left foot,
but rarely with the right foot due to right hip osteoarthritis. Dr. Soufi found the
claimant could frequently rotate the head and neck; rarely climb ramps/stairs, kneel,
and crawl; and never climb ladders/scaffolds, stoop, or crawl. Dr. Soufi determined
the claimant could tolerate frequent exposure to humidity, wetness, and pulmonary
irritants; occasional exposure to extreme cold and extreme heat; rare exposure to
unprotected heights and moving mechanical parts; and no exposure to operating a
vehicle or vibrations

ECF No. 14-2 at 19–20.  Additionally, Dr. Soufi indicated in his treating source statement that

Plaintiff "would be off-task for more than 25% of an eight-hour workday," "would be able to

maintain attention and concentration for less than 30 minutes" at a time, and "would require more

than four [work] absences per month" due to her impairments.  ECF No. 20-1 at 7; *see also* ECF

No. 14-7 at 118.

For several reasons, the ALJ determined that Dr. Soufi's opined limitations were unper-

suasive.  ECF No. 14-2 at 20.  First, the ALJ found that Dr. Soufi's sitting and standing limitations

were "unsupported by objective findings" because, notwithstanding some degeneration in the

spine and limited range of motion in one examination, the records as a whole reflected "full range

of motion of the spine, full strength, no neurological deficits, and minimal arthritis of the right

hip," as well as normal gait.  *Id.*  More, the ALJ reasoned that Dr. Soufi's limitations were incon-

sistent with Plaintiff's "reported capabilities," including cooking and cleaning multiple times per

week, shopping once per month, maintaining personal hygiene and dressing independently, social-

izing with friends, and attending religious services.  *Id.*; *see also id.* at 19 (citing ECF No. 14-7 at

71).  The ALJ was also of the view that Dr. Soufi's opinions were inconsistent with a record devoid

of "significant treatment for [Plaintiff's] alleged musculoskeletal problems."  ECF No. 14-2 at 20.

Specifically, the ALJ found that Plaintiff's "treatment of her chronic back pain has been infrequent

and conservative and [she] has not followed up with all treatment options recommended to her (namely, additional physical therapy and pain management)." *Id.* at 18. The ALJ therefore rated Dr. Soufi's opinion as unpersuasive.

Plaintiff insists that none of the ALJ's reasoning was sufficient. She first argues that, contrary to the ALJ's findings, Dr. Soufi's opinion was supported by his evaluations and was consistent with the other record evidence. ECF No. 20-1 at 8–10. Yet while Plaintiff may be correct that there is evidence in the record supporting her view of Dr. Soufi's opinion, there is also substantial evidence supporting the ALJ's contrary view, which must prevail here because the Court cannot reweigh the evidence in Plaintiff's favor.

SSA regulations governing claims filed, like this one, after March 27, 2017, provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion," including an opinion from a medical source who has treated the claimant.[11] 20 C.F.R. § 404.1520c(a). Rather, medical findings from a medical source are evaluated by analyzing (1) the supportability of the opinion (that is, the "objective medical evidence and supporting explanations presented by [the] medical source to support his or her medical opinion[ ]") and (2) the consistency of the opinion with other evidence in the record. *Id.* at § 404.1520c(b)(2), (c)(1)–(2). Of lesser importance are the medical source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the kinds and extent of examinations and testing performed, and whether the medical source examined the claimant or merely reviewed evidence; the specialization of the medical source; and "[o]ther factors" such as the medical source's familiarity with other evidence or

---

[11] Prior to March 27, 2017, the SSA's regulations required that medical opinions rendered by an individual's treating physician be accorded "'controlling weight' if they are not inconsistent with other substantial record evidence and are well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Butler*, 353 F.3d at 1003 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

understanding of SSA's policies.  *Id.* at 404.1520c(c)(3)–(5).[12]  That said, D.C. Circuit precedent "espouses a 'treating physician rule' that creates a presumption in favor of treating physicians' opinions of claimants' conditions," which "can be rebutted . . . if the treating physician's opinion is 'contradicted by substantial evidence.'"[13]  *Bennett v. Saul*, No. 18-cv-1745, 2019 WL 5549815, at *8 (D.D.C. Oct. 27, 2019) (quoting *Butler*, 353 F.3d at 1003)).  It is worth reiterating here that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high."  *Biestek*, __ U.S. at __, 139 S. Ct. at 1154.

Here, the ALJ discussed the supportability and consistency factors as required by 20 C.F.R. § 404.1520c.  As to the latter factor, the ALJ found Dr. Soufi's opinions inconsistent with the record evidence, and particularly Plaintiff's own reports of her activities and the fact that she had not engaged in "significant treatment" of her musculoskeletal issues.  ECF No. 14-2 at 20.  Those were sufficient reasons to discount Dr. Soufi's opinion.  *See, e.g.*, *Elaina N.F. v. Kijakazi*, No. 21-cv-67, 2022 WL 1815508, at *8 (E.D. Va. May 5, 2022) (finding that ALJ's discounting of physician's opinion was supported by substantial evidence where the opinion was, as here, inconsistent with the claimant's own reports of her activities, which included "cooking, shopping, maintaining personal hygiene" and socializing with others), *report and recommendation adopted*, 2022 WL

---

[12] Where the ALJ's "reasoning and adherence to the regulation[s] are clear," a "slavish recitation of each and every" factor to be considered in assigning weight to a treating source's opinion, *see* 20 C.F.R. § 404.1520c, is not required. *Morales v. Berryhill*, 484 F. Supp. 3d 130, 143 (S.D.N.Y. 2020) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)); *Gordon v. Colvin*, No. 15-cv-1028, 2016 WL 6088263, at *17 (D.D.C. Sept. 30, 2016) ("An ALJ has no obligation . . . to expressly discuss each of the factors in according weight to a physician's opinion. Rather, the regulations require only that 'good reasons' be provided for the weight assigned to a physician's opinion—even that of a treating physician."), *report and recommendation adopted*, 2016 WL 6088266 (D.D.C. Oct. 18, 2016).

[13] The D.C. Circuit has not addressed whether its treating physician rule survives the change in the SSA's regulations, which eliminated the regulation stating that a treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1520c(c)(2).  For the purposes of this Memorandum Opinion, the Court assumes that it does.  *See Butler*, 353 F.3d at 1003 (distinguishing the treating physician rule then-enshrined in the SSA's regulations from the "'treating physician rule' of our own").

1811370 (E.D. Va. June 2, 2022); *see also Russell S. v. Comm'r of Soc. Sec.*, No. 20-cv-5994, 2021 WL 5162009, at *4 (W.D. Wash. Nov. 5, 2021) ("An ALJ may reject a physician's opinion where the assessed limitations are inconsistent with [the claimant's] level of activities.").  With respect to the supportability factor, the ALJ determined that Dr. Soufi's proffered limitations were not grounded in the "objective findings."  ECF No. 14-2 at 20.  Importantly, the ALJ cited Dr. Soufi's own treatment notes in concluding that the record "consistently" reflected full range of motion and strength, along with normal gait, no neurological issues, and only mild pathology on scans and other imaging.  *Id.* (citing ECF No. 14-7 at 12–13, 17–18, 20, 23 (all noting that Plaintiff had full range of motion in her back)).  The fact that the ALJ contrasted Dr. Soufi's proffered limitations to the relatively normal findings in his own treatment notes was a sufficient explanation of the supportability factor.  *See, e.g.*, *Bruno v. Comm'r of Soc. Sec.*, No. 20-cv-2633, 2021 WL 6494779, at *8 (N.D. Ohio Dec. 3, 2021) (finding that the ALJ adequately discussed the support-ability factor by "highlight[ing] [the physician's] own treatment notes"—which indicated that, among other things, the claimant "had 5/5 strength in her extremities," "full musculoskeletal range of motion," "and a normal gait"—and concluding that the treatment notes "were inconsistent with—and did not support—[the physician's] own assessment" of the claimant's capabilities), *report and recommendation adopted*, 2022 WL 125289 (N.D. Ohio Jan. 13, 2022); *Catherine R. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-1503, 2021 WL 5235543, at *7 (D. Or. Nov. 10, 2021) (finding that the ALJ adequately discussed the supportability of the physician's opinion that the claimant "was unable to walk a 'city block[ ] without rest'" by contrasting it to "the doctor's own treatment notes that revealed [claimant] presented with a normal gait and normal range of motion in her joints" (quoting the record)).

For her part, Plaintiff explains why, in her view, Dr. Soufi's opinion was both supported by his own examinations and otherwise consistent with the record.  ECF No. 20-1 at 9–10.  That may be so.  But the core inquiry here is not whether the evidence may support an alternate finding with respect to the persuasiveness of Dr. Soufi's opinion.  *See Ali v. Colvin*, 236 F. Supp. 3d 86, 90 (D.D.C. 2017) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" (alteration in original) (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992))); *see also Hines v. Comm'r of Soc. Sec.*, No. 3:20-cv-620, 2021 WL 1895011, at *9 (N.D. Ohio Feb. 25, 2021) ("That [plaintiff] can point to other evidence in the record that might have supported [the medical] opinion is unavailing.  This court does not review the record to determine whether evidence could have supported a different result, but whether evidence supported the ALJ's decision."), *report and recommendation adopted*, 2021 WL 1571659 (N.D. Ohio Apr. 22, 2021).  Instead, the key question is whether the ALJ's findings were supported by substantial evidence.  *See Melanie A. S. v. Kijakazi*, No. 21-cv-185, 2022 WL 1721196, at *14 (D.D.C. May 12, 2022) (explaining that, in evaluating ALJ's assessment of physician's opinion, "[t]he question is not whether the evidence supports another conclusion, but rather whether the ALJ's decision is supported by substantial evidence"), *report and recommendation adopted*, 2022 WL 1718987 (D.D.C. May 27, 2022).  They were, at least at this juncture of the analysis prior to remand.

Plaintiff also accuses the ALJ of "mischaracterizing" the record with respect to his finding that she had not sought "significant treatment for her musculoskeletal problems."  ECF No. 20-1 at 11.  To the contrary, she says her "symptoms persisted despite pain medication, as well as treatment with her primary care physician every three to four months since."  *Id.*  Yet that is not

inconsistent with the ALJ's finding that Plaintiff course of treatment was "conservative" and not "significant."  ECF No. 14-2 at 18–19.  As an initial matter, ALJs can lawfully discount a physician's opinion where the claimant's course of treatment has been conservative.  *See, e.g.*, *Neil F. v. Comm'r of Soc. Sec.*, No. 21-cv-56, 2022 WL 1311695, at *10 (E.D. Va. Feb. 15, 2022) ("If a plaintiff requires only 'conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is.'" (quoting *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015))), *report and recommendation*, 2022 WL 1304540 (E.D. Va. May 2, 2022).  Courts in this Circuit have found that, relative to other treatment methods, pain medication is conservative.  *See, e.g.*, *Jamil D. v. Kijakazi*, No. 21-cv-464, 2022 WL 910334, at *10 (D.D.C. Mar. 29, 2022) (noting ALJ's finding that claimant's "pain medications" were a conservative course of treatment); *Campfield v. Comm'r of Soc. Sec.*, 228 F. Supp. 3d 87, 111–12 (D.D.C. 2016) ("'[T]he use of a commonly prescribed pain medication, even a narcotic, does not remove [claimant's] treatment from the realm of conservative treatment.'" (quoting *Purnell v. Astrue*, 662 F.Supp.2d 402, 410 (E.D. Pa. 2009))).  Thus, the fact that Plaintiff's "symptoms persisted despite pain medication" does not undermine the ALJ's finding that Dr. Soufi's opinions were unpersuasive based on the conservative course of treatment.  Yet even if that were not the case, the mere fact that pain medication was not sufficient to resolve Plaintiff's symptoms does not entitle her to benefits, because "[p]ain alone is not necessarily disabling."  *Jamil D.*, 2022 WL 910334, at *18; *see also Pinkney*, 675 F. Supp. 2d at 20–21 ("'Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof.'" (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986))); 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").  Plaintiff also claims that she underwent "treatment with [Dr. Soufi] every three to four months since" November 2012.  ECF

No. 20-1 at 11.  But Plaintiff does not explain what "treatment" Dr. Soufi either ordered or per-formed; indeed, there is no indication that, for instance, Dr. Soufi conducted physical therapy or performed surgery on Plaintiff.  So, the Court finds that the ALJ did not "mischaracterize" the record with respect to Plaintiff's conservative course of treatment and that his conclusions on that front were supported by substantial evidence.

Plaintiff then faults the ALJ for failing to recite to the VE each and every limitation Dr. Soufi proffered, including her need to elevate her legs and for unscheduled breaks, being off-task for more than a quarter of the work day, and being absent from work in excess of four times per month.  ECF No. 20-1 at 12.  Although the ALJ expressly rejected some of these limitations and therefore was not required to include them in his hypotheticals to the VE, it is not clear whether or how other limitations were addressed.  The ALJ should clarify that issue on remand.

It is well settled that "[i]n determining a claimant's ability to work, the ALJ 'must accu-rately describe the claimant's . . . impairments in any question posed to the expert.'"  *Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993) (second alteration in original) (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)).  A hypothetical question must "'encompass all relevant impairments.'"  *Lockard v. Apfel*, 175 F. Supp. 2d 28, 31 (D.D.C. 2001) (quoting *Hunt v. Masanari*, 250 F.3d 622, 626 (8th Cir. 2001)).  "Deficiencies in the ALJ's description of the claim-ant's condition 'undermine the foundation for the expert's ultimate conclusion that . . . the claimant is capable of performing'" work.  *Butler*, 353 F.3d at 1006 (quoting *Simms*, 877 F.2d at 1053).  However, "only the impairments that the ALJ has found to be credible need to be discussed in the hypotheticals."  *Pinkney*, 675 F. Supp. 2d at 19.

For the reasons discussed above, the ALJ properly rejected Dr. Soufi's opinion that Plain-tiff would need to elevate her legs throughout the day.  Again, the ALJ found that limitation, among

others, was inconsistent with the record evidence, which largely showed normal or near-normal range of motion, strength, and gait. ECF No. 14-2 at 20. However, it is unclear whether or how the ALJ considered Dr. Soufi's opinion that Plaintiff required unscheduled breaks, would be off-task for a substantial portion of the work day, and would have four or more absences from work per month. That is problematic because the ALJ "'must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position.'" *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (holding that the ALJ's failure to discuss doctors' opinions in their entirety when the omitted evidence supports the plaintiff's claim requires reversing the ALJ's decision)). On remand, the ALJ should consider those alleged limitations and determine whether they need be posed to the VE.

Finally, Plaintiff charges that the ALJ's finding that Dr. Soufi's opinion was unpersuasive clashes with his determination that Dr. Nolte's opinion was "somewhat persuasive" because both physicians reached similar conclusions on her limitations. ECF No. 20-1 at 10–11. On this record, the argument is unpersuasive. Again, Dr. Nolte found that Plaintiff "should avoid prolonged sitting, prolonged standing, frequent bending, heavy lifting, and heavy carrying." ECF No. 14-7 at 73. Dr. Soufi, on the other hand, found far more restrictive limitations. He opined that Plaintiff could "occasionally" left less than 10 pounds, "rarely" lift 10 or 20 pounds, and never lift more than 20 pounds. ECF No. 14-6 at 119. As to carrying, Dr. Soufi was of the view that Plaintiff could "rarely" carry less than 10 pounds and never carry more than 10 pounds. *Id*. Dr. Soufi also opined that Plaintiff could sit for a total of 3 hours during a normal 8-hour work day and stand or walk for no more than 1 hour. *Id*. Plaintiff's postural activities were similarly limited; Dr. Soufi believed that Plaintiff could never climb ladders or scaffolds, stoop, or crawl, and only "rarely" climb stairs or ramps, kneel, and crouch. *Id.* at 121. Thus, Dr. Soufi's proffered limitations were

more restrictive than Dr. Nolte's, rendering any comparison between the two logically dubious. For instance, whereas Dr. Nolte found that Plaintiff should avoid "frequent bending," Dr. Soufi believed she could never stoop and rarely kneel or crouch.  Further, Dr. Nolte restricted Plaintiff from "heavy carrying," yet Dr. Soufi said she could never carry more than 10 pounds.  These restrictions appear materially distinct and do not necessarily merit the same persuasiveness in the ALJ's analysis.  Thus, the fact that the ALJ determined that Dr. Nolte's opinion was "generally consistent with the evidence" does not mean Dr. Soufi's opinion—which, as explained, articulated more serious restrictions—warrants the same treatment. ECF No. 14-2 at 19.  That said, on remand the ALJ may certainly re-evaluate the persuasiveness of Dr. Soufi's opinion in light of the additional information collected on Dr. Nolte's opinion.

### C.   On Remand, the Commissioner Should Consider the Additional Evidence as Relevant Under the Social Security Regulations.

Because remand is warranted due to the ALJ's erroneous treatment of Dr. Nolte's opinion, the Court need not and does not consider Plaintiff's argument that the Appeals Council failed to consider additional evidence obtained after the ALJ rendered his decision.  ECF No. 20-1 at 7–12; 14.  Rather, on remand, the Commissioner should consider the additional evidence to the extent it is relevant under the SSA's regulations.  Other courts have ordered the same in similar circumstances.  *See, e.g.*, *Austin v. Colvin*, No. 13-cv-2878, 2015 WL 4488333, at *7 n.4 (M.D. Pa. July 23, 2015) (finding that although additional evidence submitted after an ALJ's decision should not be used to assess whether substantial evidence supports the decision, "the records will be before the ALJ for review" if, as here, the court remands on other grounds); *Strobbe v. Astrue*, No. 11-cv-1086, 2012 WL 2921849, at *3 (W.D. Mo. July 17, 2012) ("Because the Court remands this case on other grounds, the Court instructs the ALJ to consider on remand the new evidence submitted by [plaintiff] to the extent it is relevant under the [SSA's] Regulations."); *Chapman v.*

*Astrue*, No. 07-cv-2868, 2010 WL 419923 (D.S.C. Jan. 29, 2010) (finding that because the matter was being remanded on other grounds, the ALJ should consider the additional evidence); *see also Andre M. v. Saul*, No. 18-cv-1669, 2019 WL 4038561, at *11 (D. Md. Aug. 27, 2019) (holding that a remand on other grounds mooted plaintiff's argument about additional evidence, yet "the [additional] evidence in question would be available to the ALJ" before a second hearing is held so the ALJ could "review the evidence and weigh it accordingly").

## IV.   CONCLUSION

For the reasons stated above, the Court will enter an Order **DENYING** Defendant's motion for judgment of affirmance (ECF No. 21), **GRANTING** Plaintiff's motion for judgment of reversal (ECF No. 20), and **REMANDING** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date:  August 22, 2022

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE